[No. C041090. Third Dist. Feb. 5, 2003.]

SANTA TERESA CITIZEN ACTION GROUP et al., Plaintiffs and Appellants, v.
STATE ENERGY RESOURCES CONSERVATION AND DEVELOPMENT COMMISSION, Defendant and Respondent;
CALPINE CORPORATION, Real Party in Interest and Respondent.

1442

**COUNSEL**

Law Offices of Stephan C. Volker, Stephan C. Volker and Eileen M. Rice for Plaintiffs and Appellants.

William M. Chamberlain, Jonathan Blees, Richard C. Ratliff and Kerry Willis for Defendant and Respondent.

Ellison, Schneider & Harris, Jeffery D. Harris and Christopher T. Ellison for Real Party in Interest and Respondent.

## OPINION

**ROBIE, J.**—Is the statute that grants exclusive jurisdiction to the California Supreme Court to review power plant certification decisions of the State Energy Resources Conservation and Development Commission (the Energy Commission) constitutional? Yes.

In this mandate proceeding, several parties opposed to the construction of a power plant in Santa Clara County sought to overturn a decision by the Energy Commission approving the project, contending the commission's decision violated their constitutional rights. The superior court concluded the Supreme Court had exclusive jurisdiction to review the Energy Commission's decision and sustained its demurrer and that of real party in interest Calpine Corporation without leave to amend.

On appeal from the judgment of dismissal, plaintiffs contend that because the Supreme Court summarily denied their petition for a writ of mandate seeking review of the Energy Commission's decision in that court without reviewing the agency record, the superior court had jurisdiction to review their constitutional challenges to the decision.[1] We disagree and affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1999, Calpine applied to the Energy Commission for certification of a power plant, the Metcalf Energy Center (MEC), to be located in the Coyote Valley in Santa Clara County. Despite plaintiffs' opposition, on September 24, 2001, the Energy Commission approved Calpine's application. Plaintiffs petitioned for reconsideration but the Energy Commission denied their petition on November 19, 2001. (Pub. Resources Code, § 25530; all further section references are to this code unless otherwise noted.)

On December 19, 2001, plaintiffs simultaneously filed a petition for a writ of mandate in the California Supreme Court and a petition for a writ of mandate in the Sacramento County Superior Court, both of which sought to set aside the Energy Commission's certification of the MEC. In both petitions, plaintiffs alleged the Energy Commission had: (1) violated their state

---

[1] The plaintiffs and appellants in this proceeding are Santa Teresa Citizen Action Group; Great Oaks Water Company; the City of Morgan Hill; Demand Clean Air, Inc.; and Californians for Renewable Energy, Inc. We refer to them collectively as plaintiffs.

and federal constitutional due process rights by failing to provide them with a fair hearing; (2) violated the public trust doctrine in the California Constitution; and (3) violated the supremacy clause of the United States Constitution by certifying the MEC, in conflict with federal laws and regulations.[2]

Calpine and the Energy Commission demurred to plaintiffs' superior court petition on the ground the Supreme Court had exclusive jurisdiction to review the Energy Commission's certification of thermal power plants.[3] In opposition to the demurrers, plaintiffs contended they filed the writ petition in superior court for the limited purpose of obtaining review of their constitutional claims in the event the Supreme Court summarily denied review of their writ petition to that court. Plaintiffs contended that if the Supreme Court denied review of their petition, superior court review of their constitutional claims was constitutionally required.

The superior court sustained the demurrers without leave to amend, concluding exclusive jurisdiction lies in the Supreme Court. Plaintiffs timely appealed the resulting judgment of dismissal.

Five days after the hearing on the demurrers, the Supreme Court summarily denied plaintiffs' writ petition to that court.

## DISCUSSION

## I

### *Standard of Review*

On review of an order sustaining a demurrer without leave to amend, our standard of review is de novo, "i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law." (*Montclair Parkowners Assn. v. City of Montclair* (1999) 76 Cal.App.4th 784, 790 [90 Cal.Rptr.2d 598].) Here, the question is whether the superior court had jurisdiction to review plaintiffs' constitutional challenges to the commission's certification of the MEC. We begin our analysis with the relevant statutes.

---

[2]Plaintiffs also alleged in their writ petition to the Supreme Court that the commission had violated the California Environmental Quality Act. (§ 21000 et seq.)

[3]Both parties also demurred on other grounds that are irrelevant here.

II

*Judicial Review of Power Plant Certification Decisions Lies Exclusively in the Supreme Court*

■ Subdivision (a) of section 25901 provides for review of decisions by the Energy Commission, as follows: "Within 30 days after the commission issues its determination on any matter specified in this division [(§ 25000 et seq.)], *except as provided in Section 25531,* any aggrieved person may file with the superior court a petition for a writ of mandate for review thereof." (Italics added.) The exception provided for in section 25531 applies to power plant certification decisions, like the one at issue here. Subdivision (a) of section 25531 provides: "The decisions of the commission on any application for certification of a site and related facility are subject to judicial review by the Supreme Court of California."[4] Subdivision (b) of the statute provides in relevant part: "No new or additional evidence may be introduced upon review and the cause shall be heard on the record of the commission as certified to by it. The review shall not be extended further than to determine whether the commission has regularly pursued its authority, including a determination of whether the order or decision under review violates any right of the petitioner under the United States Constitution or the California Constitution. The findings and conclusions of the commission on questions of fact are final and are not subject to review, except as provided in this article. These questions of fact shall include ultimate facts and the findings and conclusions of the commission." Subdivision (c) of the statute provides: "Subject to the right of judicial review of decisions of the commission, no court in this state has jurisdiction to hear or determine any case or controversy concerning any matter which was, or could have been, determined in a proceeding before the commission, or to stop or delay the construction or operation of any thermal powerplant except to enforce compliance with the provisions of a decision of the commission."

Read together, sections 25531 and 25901 allow a person aggrieved by a decision of the Energy Commission to seek judicial review of that decision by filing a petition for a writ of mandate in the superior court, *unless* the decision is one on an application for certification of a thermal power plant, in which case the petition must be filed in the Supreme Court.

---

[4]The term "facility" refers to "any electric transmission line or thermal powerplant, or both electric transmission line and thermal powerplant," and the term "site" refers to "any location on which a facility is constructed or is proposed to be constructed." (§§ 25110, 25119.)

## III

*Supreme Court Review of Power Plant Certification Decisions Is on the Merits*

A. *There Is No Due Process Violation*

Plaintiffs recognize the foregoing statutes required them to seek review of the Energy Commission's decision in the Supreme Court rather than in the superior court; however, they contend that "to sustain the constitutionality of [the statutes], . . . sections 25531 and 25901 must be read together to assure that either the Supreme Court, or if it summarily denies review, then the superior court, has jurisdiction over constitutional claims arising out of [the Energy Commission's] proceedings." (Italics omitted.) Plaintiffs base their argument on the United States Supreme Court's decision in *Ohio Valley Co. v. Ben Avon Borough* (1920) 253 U.S. 287 [40 S.Ct. 527, 64 L.Ed. 908] (*Ben Avon*).

In *Ben Avon*, a case involving a decision by the Public Service Commission of Pennsylvania setting a rate schedule for a water company, the United States Supreme Court held "that if one attacks a rate as confiscatory, thereby asserting its unconstitutionality as a deprivation of property without due process of law, the complaining party must be given an opportunity to submit that constitutional question to a judicial tribunal for its independent judgment on both the facts and the law." (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 157 [93 Cal.Rptr. 234, 481 P.2d 242] (conc. opn. of Burke, J.), discussing *Ben Avon, supra*, 253 U.S. 287.)

*Ben Avon* is inapposite because plaintiffs' complaint is not that they were denied independent (as opposed to deferential) judicial review of the Energy Commission's decision to certify the MEC, but that they were denied judicial review of their constitutional claims altogether. Specifically, plaintiffs assert they were denied their due process right to judicial review of their constitutional claims because of "the California Supreme Court's complete failure to exercise any substantive review at all—as confirmed by its failure to request and to consider [the Commission's] record of proceedings." The flaw in this argument is plaintiffs' assumption that the Supreme Court failed to conduct any substantive review of their constitutional claims when the court summarily denied their petition for a writ of mandate. This assumption is unwarranted.

If a writ petition in the California Supreme Court is the exclusive means of obtaining review of a quasi-judicial decision, the Supreme Court's summary denial of such a petition is a final judicial determination *on the merits*.

(*In re Rose* (2000) 22 Cal.4th 430, 444 [93 Cal.Rptr.2d 298, 993 P.2d 956].) As the Supreme Court explained in *Rose*: "An order summarily denying a petition for writ of mandate or prohibition generally reflects a discretionary refusal to exercise original jurisdiction over a matter that properly may be pursued in the lower courts. [Citation.] When the sole means of review is a petition in this court, however, our denial of the petition—with or without an opinion—reflects a judicial determination on the merits." (*Id.* at p. 445.)

Furthermore, contrary to plaintiffs' suggestion, it makes no difference that before summarily denying plaintiffs' petition the Supreme Court did not obtain or consider a certified record of the Energy Commission's proceedings. Indeed, the United States Supreme Court rejected a similar argument in *Napa Valley Co. v. R.R. Comm.* (1920) 251 U.S. 366 [40 S.Ct. 174, 64 L.Ed. 310] (*Napa Valley*).

In *Napa Valley*, the Board of Railroad Commissioners—the predecessor to the Public Utilities Commission (PUC)—decided to reduce the rates for electricity charged by the Napa Valley Electric Company to the Calistoga Electric Company, which rates had been set by a contract between the two companies. (*Napa Valley, supra,* 251 U.S. at pp. 367-369 [40 S.Ct. at pp. 174-175].) At that time, decisions by the commission were subject to review by writ of certiorari or review from the California Supreme Court, and the certified record of the commission's proceedings would not be prepared or delivered to the court unless a writ issued. (*Id.* at pp. 370-371 [40 S.Ct. at pp. 175-176].) The Napa Valley Electric Company sought a writ of review from the state Supreme Court, arguing the commission had violated the company's federal constitutional rights. (*Id.* at p. 369 [40 S.Ct. at pp. 174-175].) The California Supreme Court denied the petition and refused to issue a writ of review, thus deciding the matter without obtaining a certified copy of the administrative record. (*Ibid.*) The Napa Valley Electric Company then commenced an action against the commission in federal district court, but the district court dismissed the action on the ground the California Supreme Court's denial of review had res judicata effect. (*Id.* at pp. 369-370 [40 S.Ct. at pp. 174-175].)

On appeal from the district court's dismissal, the United States Supreme Court affirmed. (*Napa Valley, supra,* 251 U.S. at p. 373 [40 S.Ct. at p. 176].) The Napa Valley Electric Company contended that by "den[ying] the company's 'petition for a preliminary writ, and refus[ing] to even cause the record in the case, certified by the Commission, to be brought up,'" the California Supreme Court had "'simply refused to entertain jurisdiction of the controversy.'" (*Id.* at p. 370 [40 S.Ct. at p. 175].) The United States

Supreme Court disagreed, noting "the common, and, at times, necessary, practice of courts to determine upon the face of a pleading what action should be taken upon it." (*Id.* at p. 372 [40 S.Ct. at p. 176].) The United States Supreme Court cited with approval a number of previous California Supreme Court cases in which "the applications for writs of certiorari were denied, which was tantamount to a decision of the court that the orders and decisions of the Commission did not exceed its authority or violate any right of the several petitioners under the Constitution of the United States or of the state of California." (*Ibid.*) The United States Supreme Court then concluded: "And so with the denial of the petition of the [Napa Valley] Electric Company,—it had like effect and was the exercise of the judicial powers of the court." (*Ibid.*)

It follows from the *Napa Valley* decision that if the California Supreme Court summarily denies a petition for a writ of mandate seeking review of a thermal power plant certification decision by the Energy Commission without considering a certified record of the proceedings before the commission, the court's action nonetheless must be deemed an exercise of the judicial powers of the court and a judicial decision on the merits of the petition.

Plaintiffs contend the *Napa Valley* decision can no longer be applied to constitutional claims because "any such interpretation of *Napa Valley* would run head-on into [*Ben Avon*'s] direct, definitive and dispositive ruling to the contrary." We disagree. Even if, as plaintiffs assert, *Ben Avon* stands for the proposition that "the federal Constitution *demands* that constitutional claims arising out of administrative proceedings be given independent judicial review on the *merits* of the claims," that proposition is not at odds with the court's own holding less than six months earlier in *Napa Valley* that judicial review on the merits may in some circumstances occur without review of the evidentiary record.[5] Plaintiffs cite no authority for their assertion that *Ben Avon*'s requirement of independent judicial review cannot be satisfied by a summary review conducted on the face of the pleadings, which under *Napa Valley* constitutes judicial review on the merits. Consequently, we reject plaintiffs' argument that "*Napa Valley* is contrary to, and thus overruled by, the Supreme Court's subsequent ruling in" *Ben Avon*.

Plaintiffs in this case received judicial review on the merits of their constitutional claims from the California Supreme Court, notwithstanding its summary denial of their petition, and due process did not entitle them to a second bite of the apple in the superior court.

---

[5]*Napa Valley* was decided on January 19, 1920; *Ben Avon* was decided on June 1, 1920.

## B. *There Is No Separation of Powers Violation*

As an alternate basis for their argument, plaintiffs contend they were entitled to judicial review of their constitutional claims by virtue of the separation of powers doctrine embodied in article III, section 1 of the United States Constitution and article IV, section 1 of the California Constitution. According to plaintiffs, the separation of powers doctrine guarantees them the right "to seek [judicial] review of constitutional claims arising out of agency action." Plaintiffs contend that if the Energy Commission, an administrative agency that is a part of the executive branch, "passes final judgment on constitutional matters and the courts fail to provide review, *as happened in this case*, the constitutional scheme [separating the executive branch from the judicial branch] is fundamentally altered, and the rights of citizens are unconstitutionally jeopardized."

"The separation of powers doctrine articulates a basic philosophy of our constitutional system of government; it establishes a system of checks and balances to protect any one branch against the overreaching of any other branch. [Citations.] Of such protections, probably the most fundamental lies in the power of the courts to test legislative and executive acts by the light of constitutional mandate and in particular to preserve constitutional rights, whether of individual or minority, from obliteration by the majority." (*Bixby v. Pierno*, *supra*, 4 Cal.3d at p. 141.)

Plaintiffs' contention the separation of powers doctrine was violated rests on the proposition that because the California Supreme Court's summary denial of review amounted to no judicial review whatsoever, the Energy Commission's decision was "final as to the facts," which "represents an unconstitutional delegation of the judicial power to an executive agency." The answer to that argument is the same as the answer to plaintiffs' due process argument: *Plaintiffs' constitutional claims were judicially reviewed on the merits by the California Supreme Court*, notwithstanding that court's summary denial of their petition. Thus, the executive branch did not pass final judgment on plaintiffs' constitutional claims, the Supreme Court did, and the separation of powers doctrine was satisfied.

Obliquely, plaintiffs suggest section 25531's limitation of judicial review of Energy Commission power plant certification decisions to the Supreme Court violates article VI, section 10 of the California Constitution, which provides in relevant part that "[t]he Supreme Court, courts of appeal, superior courts, and their judges . . . have original jurisdiction in proceedings for extraordinary relief in the nature of mandamus, certiorari, and prohibition." The California Supreme Court rejected an identical argument

in *County of Sonoma v. State Energy Resources Conservation etc. Com.* (1985) 40 Cal.3d 361 [220 Cal.Rptr. 114, 708 P.2d 693] and we are bound by that decision. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) In a footnote in their brief, plaintiffs contend a recent amendment to section 25531 "divorcing" that statute "from the protective ambit of the Public Utility Commission's constitutionally-based judicial review procedures reopens the question of this section's constitutionality."[6] However, plaintiffs fail to offer any further argument on the point and therefore we deem the issue waived. (See *People v. Harper* (2000) 82 Cal.App.4th 1413, 1419, fn. 4 [98 Cal.Rptr.2d 894] ["an argument raised in such perfunctory fashion is waived"]; Cal. Rules of Court, rule 14(a)(1)(B) [an appellate brief must "state each point under a separate heading or subheading summarizing the point, and support each point by argument"].)

For the foregoing reasons, the trial court did not err in sustaining the demurrers of the Energy Commission and Calpine and in dismissing plaintiffs' petition for lack of jurisdiction.

## DISPOSITION

The judgment of dismissal is affirmed. Defendant and real party in interest shall recover their costs on appeal. (Cal. Rules of Court, rule 26(a)(1).)

Raye, Acting P. J., and Morrison, J., concurred.

A petition for a rehearing was denied March 5, 2003, and on February 24, 2003, the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied May 14, 2003.

---

[6]When *County of Sonoma* was decided in 1985, former section 25531 provided that power plant certification decisions by the Energy Commission were "subject to judicial review in the same manner as PUC decisions on the application for a certificate of public convenience and necessity for the same site and related facility"—i.e., by writ of certiorari or review from the California Supreme Court. (*County of Sonoma v. State Energy Resources Conservation etc. Com., supra,* 40 Cal.3d at p. 366; former Pub. Util. Code, § 1756 [Stats. 1983, ch. 377, § 2, pp. 1600-1601].) In 1996, the Legislature changed this long-standing practice and made PUC decisions reviewable by "petition for a writ of review in the court of appeal or the Supreme Court." (Stats. 1996, ch. 855, § 5 [amending former Pub. Util. Code, § 1756].) This amendment had the effect of making power plant certification decisions by the Energy Commission reviewable in either the court of appeal or the Supreme Court, pursuant to former section 25531. In 2001, however, the Legislature amended section 25531 and returned review of power plant certification decisions by the Energy Commission to the Supreme Court alone. (Stats. 2001, 1st Ex. Sess. 2001, ch. 12, § 8.)