[No. G039686. Fourth Dist., Div. Three. Feb. 9, 2009.]

LARRY MENKE, INC., et al., Plaintiffs and Appellants, v.
DAIMLERCHRYSLER MOTORS COMPANY, LLC, et al., Defendants and
Respondents.

**COUNSEL**

Law Offices of Michael J. Flanagan, Michael J. Flanagan and Gavin M. Hughes for Plaintiffs and Appellants.

Hunton & Williams, Ann Marie Mortimer, James Kawahito; Wheeler Trigg Kennedy, Mark F. Kennedy, Mark T. Clouatre and John P. Streelman for Defendants and Respondents.

**OPINION**

**ARONSON, J.**—Larry Menke, Inc., doing business as Larry Menke Chrysler, and Larry Menke (collectively, Menke) appeal from a judgment of dismissal after the trial court sustained the demurrer filed by DaimlerChrysler Motors Company, LLC, and one of its employees, Louis Stavale (collectively, Chrysler). Menke had intervened as an additional plaintiff in Wester Motors's (Wester) suit against Chrysler after Chrysler declined to approve Wester's application to transfer its Dodge automobile dealership in Seaside, California, to Menke. Menke contends the trial court erred in concluding its first amended complaint stated no cause of action for violation of Vehicle Code section 11713.3, subdivision (e),[1] which governs a manufacturer's responsibilities to a franchisee seeking to transfer or assign its interest in an automobile dealership. Menke also challenges the trial court's conclusion its complaint failed to state claims for intentional or negligent interference with prospective business advantage or for tortious interference with the franchise transfer contract agreed upon by Wester and Menke. Because section 11713.3,

---

[1] All subsequent unlabeled section references are to the Vehicle Code.

subdivision (e), applies by its express terms only to franchise transferors—not their prospective transferees—and because Menke alleged no independent torts other than the putative violation of the Vehicle Code, Menke's claims fail as a matter of law and the trial court properly sustained Chrysler's demurrer. We therefore affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

After local government officials announced plans to condemn part of the auto mall in which Wester operated, Wester's owners sought to exit the business and sell their Dodge dealership rather than relocate. Menke, already a DaimlerChrysler franchisee in Seaside with a Chrysler dealership, expressed interest in bringing the Dodge line under its roof. But according to Menke, Chrysler personnel expressed immediate and unrelenting hostility to the idea, with one representative announcing the transfer was " 'never going to happen' " and another stating that Chrysler approval would occur " '[o]ver my dead body.' " Nevertheless, Menke continued negotiations with Wester, though it displeased Menke when Chrysler invited Donald Butts, another interested dealer, to franchise-sale discussions with Wester that Menke had believed would be exclusive and private. Louis Stavale, a Chrysler representative, reportedly informed Wester that Chrysler "would find it difficult to approve Larry Menke, but Donald Butts was an approvable candidate." Wester, however, rejected Butts's $500,000 offer for the franchise, accepting Menke's $950,000 bid. Wester's franchise agreement with Chrysler conditioned any transfer of the franchise on Chrysler's approval. The terms of section 11713.3 governing franchise transfers included the same condition. (§ 11713.3, subd. (e).)

Chrysler rejected the proposed transfer of Wester's franchise to Menke. Chrysler detailed its reasons for rejecting Menke as a franchisee in a letter to Wester required by section 11713.3, subdivision (d)(2)(B). To no avail, Menke wrote Chrysler a detailed letter explaining how he could resolve Chrysler's unfounded reservations. Menke explained, for example, that its working capital for its Chrysler dealership exceeded Chrysler's requirements, contrary to Chrysler's letter. Chrysler was not persuaded. Chrysler also later rejected a separate transfer agreement between Butts and Wester.

Wester eventually sued Chrysler, and Menke intervened as an additional plaintiff. Asserting statutory violations and interference with prospective

business advantage from Menke's proposed transfer agreement with Wester, Menke alleged Chrysler *"predetermined,* based upon *bias* and *personal animus,* and without justification, and therefore *unreasonably and in bad faith,* that Menke would never receive the franchise under any circumstances, in violation of Vehicle [C]ode [s]ection 11713.3(e)." Menke alleged Chrysler repeatedly made false statements and that Chrysler based its refusal to approve the transfer to Menke upon knowingly false statements and personal bias. According to Menke, "Chrysler intentionally sought to induce the breach and/or failure of the contract for the sale of Wester Dodge to Larry Menke, by among other things, inviting another party into *confidential discussions* [*sic*] who was only willing to offer half the amount Menke was willing to pay for the Dodge franchise." According to Menke, Chrysler's tortious acts enabled it to "reacquire the Wester Dodge franchise for *no cost* even though Menke was willing to pay nearly $1 million."

The trial court sustained Chrysler's demurrer to the complaint with leave for Menke to amend, and after concluding Menke's first amended complaint failed to cure the pleading defects, denied further leave to amend. Menke now appeals.

II

DISCUSSION

A. *Menke Had No Standing to Assert Violation of Section 11713.3, Subdivision (e)*

Menke contends the trial court erred in sustaining Chrysler's demurrer to his cause of action under section 11713.3, subdivision (e).[2] According to Menke, subdivision (e) protects not only automobile franchise transferors, but also potential transferees. We disagree. "On review of an order sustaining a demurrer without leave to amend, our standard of review is de novo, 'i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law.' [Citation.]" (*Santa Teresa Citizen Action Group v. State Energy Resources Conservation & Development Com.* (2003) 105 Cal.App.4th 1441, 1445 [130 Cal.Rptr.2d 392].)

█ Subdivision (e) makes it "unlawful and a violation of this code" for any manufacturer "[t]o prevent, or attempt to prevent, *a dealer* from *receiving*

---

[2] For convenience, we hereafter sometimes refer to section 11713.3, subdivision (e), as simply subdivision (e).

fair and reasonable compensation for the value of the franchised business." (Italics added.) Subdivision (e) further provides: "There shall be no transfer or assignment of *the dealer's franchise* without the consent of the manufacturer or distributor, which consent shall not be unreasonably withheld or conditioned upon the release, assignment, novation, waiver, estoppel, or modification of any claim or defense by the dealer." (Italics added.)

■ " 'When the language of a statute is clear and unambiguous, there is no need for interpretation and we must apply the statute as written.' " (*Chambers v. Miller* (2006) 140 Cal.App.4th 821, 825 [44 Cal.Rptr.3d 777].) The terms of section 11713.3, subdivision (e), could not be clearer: they protect franchise owners against manufacturer conduct that would prevent the dealer "from *receiving* fair and reasonable compensation for the value of the franchised business." (Italics added.) The statute says nothing about potential purchasers. The trial court aptly summed up the statute this way: "The plain language of the code section makes clear that it is the dealer selling the franchise who has standing to sue, and not a prospective buyer"; accordingly, "[i]t is plain that the 'dealer' referred to in the statute is the seller of a franchise, i.e., Wester Motors, and not this plaintiff."

■ We do not pass on the wisdom or policy of the Legislature's enactments. "In interpreting statutes, we follow the Legislature's intent, as exhibited by the plain meaning of the actual words of the law, ' " "whatever may be thought of the wisdom, expediency, or policy of the act.' " ' " (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632 [59 Cal.Rptr.2d 671, 927 P.2d 1175].) Menke protests there is no reason to distinguish between it as a buyer and Wester as a seller since "*both* suffered demonstrable harm" from Chrysler's decision to reject the transfer. But statutes affecting economic interests need only survive limited scrutiny under the rational basis test. (*Landau v. Superior Court* (1998) 81 Cal.App.4th 191, 208 [97 Cal.Rptr.2d 657].) Limiting the manufacturer's liability to its franchisee rather than also including potential purchasers passes muster because the Legislature could rationally conclude the possibility of *multiple* disappointed suitors would expose the manufacturer to disproportionate liability for a single franchise.

■ Menke relies on section 11726 for a contrary conclusion, but the trial court correctly read that provision in conjunction with section 11713.3, subdivision (e), to determine that the damages and attorney fee *remedies* specified in section 11726 are only available to *transferors* frustrated by manufacturer conduct violating subdivision (e), not to prospective transferees. Section 11726 provides: "Any licensee suffering pecuniary loss because of any willful failure by any other licensee to comply with any provision of Article 1 (commencing with Section 11700) . . . may recover damages and

reasonable attorney fees therefor in any court of competent jurisdiction." Seizing on the "[a]ny licensee" language, Menke contends that because it already holds a license under the Vehicle Code as a Chrysler franchisee, section 11726 authorizes it to sue.

■ Individual statutes, however, are not to be read in isolation. " ' "[T]he meaning of the enactment may not be determined from a single word or sentence; the words must be construed in context . . . ." [Citation.]' " (*State of California ex rel. Dockstader v. Hamby* (2008) 162 Cal.App.4th 480, 487 [75 Cal.Rptr.3d 567]; see *Gately v. Cloverdale Unified School Dist.* (2007) 156 Cal.App.4th 487, 494 [67 Cal.Rptr.3d 377] ["Statutory provisions that are in pari materia, i.e., related to the same subject, should be construed together as one statute and harmonized if possible."].) Menke cannot transmute the accidental circumstance that it, among all possible purchasers,[3] is already a licensee into standing contrary to the terms of subdivision (e). To illustrate the fallacy of Menke's approach: assuming arguendo that the terms of subdivision (e) somehow embraced potential transferees as a protected class, it would defy reason to deny particular transferees a remedy simply because they are not licensees as specified in section 11726. ■ The more natural reading is, as the trial court correctly concluded, that section 11726 merely specifies the remedy available for violations of subdivision (e) and does not expand or restrict the scope of those entitled to sue under it.

■ Menke asserts the reference to "any other person" in section 11713.3, subdivision (d)(1) confers standing on all persons to sue. But, like subdivision (e), the terms of subdivision (d)(1) make it clear that its protection extends to franchise transferors, not transferees. Under section 11713.3, subdivision (d)(1), a manufacturer may not "prevent or require, or attempt to prevent or require, by contract or otherwise, [with] *any dealer, or any officer, partner, or stockholder of any dealership*, the sale or transfer of any part of the interest of any of them to any other person." (Italics added.) These plain terms, as in subdivision (e), do not include potential transferees. Because neither subdivision (d)(1) or (e) of section 11713.3 creates a cause of action for potential transferees, the trial court correctly sustained Chrysler's demurrer on Menke's statutory claim.

B. *Menke's Interference Claims Are Also Without Merit*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[3] Section 11713.3, subdivision (d)(1), expressly authorizes a franchise owner to transfer the dealership to "any other person," not just to persons already licensed under the Vehicle Code.

[*]See footnote, *ante*, page 1088.

## III

## DISPOSITION

The judgment is affirmed. Respondents are entitled to their costs on appeal.

Rylaarsdam, Acting P. J., and O'Leary, J., concurred.

A petition for a rehearing was denied March 5, 2009.